■ ALFRED SACHANOWSKI et al., Appellants, v WYOMING COUNTY SHERIFF'S DEPARTMENT, Respondent. (Action No. 1.) AUDREY SACHANOWSKI, as Administratrix of the Estate of RONALD SACHANOWSKI, Deceased, Respondent, v ALLEN CAPWELL, as Sheriff of Wyoming County et al., Appellants. (Action No. 2.) [665 NYS2d 197] —Order unanimously modified on the law and as modified affirmed without costs in accordance with the following Memorandum: This is the consolidation of two actions, the first brought by Alfred and Marie Sachanowski against the Wyoming County Sheriff's Department, the second brought by the Estate of Ronald Sachanowski against the Sheriff's Department and four of its officials. Each complaint arises out of an incident in which William "Red" Greene shot and killed Ronald Sachanowski and wounded Alfred Sachanowski; each alleges a negligent failure by defendants to provide police protection. Plaintiffs in action No. 1 appeal from an order granting the motion of defendant for summary judgment dismissing the complaint on the ground that it was not in a "special relationship" with Alfred Sachanowski and had not assumed a "special duty" to protect him. The defendants in action No. 2 appeal from so much of the same order as denied their motion for summary judgment dismissing the complaint on the same ground; the court found a triable question of fact on the issue whether defendants owed a special duty to Ronald Sachanowski.

A municipality may not be held liable for failing to provide police protection absent a special relationship between the municipality and the injured party giving rise to a special duty on the part of the municipality to exercise reasonable care for the protection of the injured party (*see, Kircher v City of Jamestown*, 74 NY2d 251, 255-259; *Cuffy v City of New York*, 69 NY2d 255, 260-261, *mot to amend remittitur dismissed* 70 NY2d 667). "The elements of this 'special relationship' are: (1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking" (*Cuffy v City of New York, supra*, at 260; *see also, Kircher v City of Jamestown, supra*, at 257).

Applying that test, we conclude that defendants are not liable for the shooting of either victim. The record is barren of any evidence that Ronald or Alfred Sachanowski received express or implied assurances of protection from agents of the

Sheriff's Department. In fact, there was no direct communication between Alfred Sachanowski and agents of the Sheriff's Department. Further, Greene had made no threats against Alfred Sachanowski, and defendants were unaware of Alfred's presence in the house. There is thus no basis for concluding that defendants assumed a special duty to protect Alfred (*see, Cuffy v City of New York, supra*, at 262).

With respect to Ronald Sachanowski's conversations with agents of the Sheriff's Department, it is undisputed that Investigator Spink made no assurances, but merely advised Ronald Sachanowski that he could file a complaint for aggravated harassment. Further, the only assurances given by Dispatcher Myers and/or Deputy McElver were that McElver would come out to Ronald Sachanowski's house shortly to take the complaint. The undisputed evidence establishes that Ronald Sachanowski did not ask for protection, that McElver did not offer it and that McElver had no intention of remaining on the scene to provide protection (*see, Yearwood v Town of Brighton*, 101 AD2d 498, 501-503, *affd* 64 NY2d 667).

The undisputed proof additionally establishes any lack of reliance by Alfred or Ronald Sachanowski (*see, Cuffy v City of New York, supra*, at 263). Unlike *Cuffy*, this is not a case where the victims remained trapped in a place of danger while awaiting police response. Ronald and Alfred came and went throughout the afternoon, while awaiting Deputy McElver's arrival and Greene's threatened arrival; further, they did not wait helplessly, but armed themselves with Alfred's shotgun. The lack of reliance by the victims breaks any causal link between McElver's alleged inaction and the injuries sustained by the victims (*see, Kircher v City of Jamestown, supra*, at 259).

Given that McElver had merely promised to respond promptly to the scene to take a complaint, his involvement had not progressed to the point where there arose a "special relationship" between McElver and the victims. McElver's delay in responding to the scene is not actionable. "How the police choose to deal with the many requests for assistance they receive daily are aspects of their more general duty of protection owed to the public and cannot be transformed on the facts of this case into a special duty running to the injured" parties (*Kircher v City of Jamestown, supra*, at 260; *see, Yearwood v Town of Brighton, supra*, at 501-503). "[T]here is nothing to distinguish [these] unfortunate [victims] from the numerous other crime victims for whom, tragically, police assistance has arrived too late" (*Kircher v City of Jamestown, supra*, at 260). We therefore modify the order by granting the motion of

defendants in action No. 2 for summary judgment dismissing the complaint. (Appeals from Order of Supreme Court, Wyoming County, Feeman, J.—Summary Judgment.) Present—Denman, P. J., Pine, Wisner, Balio and Boehm, JJ.